UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>**ALEXIS JAMES ANDREAS TAMBERG**,<br><br>Defendant. | Criminal Action No. 19-cr-138 (TSC) |

**OPINION & ORDER**

Defendant Alexis James Andreas Tamberg pleaded guilty to transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c) based on a series of Facebook messages threatening President Donald J. Trump and Congresswoman Alexandra Ocasio Cortez. Order at 1, ECF No. 55. In light of Tamberg's extensive mental health issues, which contributed to his criminal conduct, the Government sought and the court imposed a sentence of time served and two years' supervised release. *Id.* at 3; J. at 2–3, ECF No. 48. The court terminated his supervised release one month early in July 2022. Order at 6. With Judgment entered, no appeal taken, and Defendant's sentence complete, all proceedings had concluded and this case was closed. Then, on May 8, 2025, nearly three years since the last activity in this matter, Defendant filed a Motion to Alter Judgment, asking the court to enjoin search engines, specifically, Google and Bing, from reporting on this case. Mot. for Order Restricting Search Engines I, ECF No. 58 ("Mot. I"). On May 27, 2025, and June 2, 2025, he filed additional motions *pro se* seeking the same relief. Mot. for an Order Restricting Search Engines II, ECF No. 61 ("Mot. II"); Mot. for Leave, ECF No. 62. Tamberg represents that public reporting by search engines "leads to confusion" because he and his father have similar names. Mot. I at 1. Defendant's name is Alexis James Andreas Tamberg;

his father's name is Andreas Tamberg. *Id.* According to Tamberg, the search engines report the case as "*United States v. Andreas Tamberg*," which "has negatively impacted" his father's life. Mot. II at 1. Because the court lacks subject-matter jurisdiction, Tamberg's motion is DENIED.

"Article III of the Constitution confines the federal judicial power to 'Cases' and 'Controversies.'" *United States v. Texas*, 599 U.S. ---, ---, 143 S.Ct. 1964, 1969 (2023). For there to be a case or controversy under Article III, a plaintiff must have a "personal stake" in the case—in other words, standing. *Biden v. Nebraska,* 600 U.S. ---, ---, 143 S.Ct. 2355, 2365 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. ---, ---, 141 S.Ct. 2190, 2203 (2021)). Because the court has no jurisdiction where a plaintiff has no standing, the court may raise it *sua sponte*. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Article III's case-or-controversy requirement persists through all stages of federal judicial proceedings, including post-conviction criminal proceedings. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *United States v. Mejia*, 502 F. Supp. 3d 387, 392 (D.D.C. 2020). An ongoing term of incarceration or supervised release "always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the [supervised release]) constitutes a concrete injury caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7. Once the "sentence has expired, however, some concrete and continuing injury . . . —some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Id.* (citation omitted). Collateral consequences include civil disabilities that subject individuals "to laws that restrict certain trades and licenses to non-felons, to laws that bar service as a public official or on a jury, that disfranchise felons from voting, or that bar service in the armed forces." *Mejia*, 502 F. Supp. 3d at 393. When an injury capable of redress by a favorable decision no longer exists, the court lacks jurisdiction. *Id.*

Tamberg's term of supervised release, which would have qualified as a redressable injury, terminated nearly three years ago. Order at 6; *see United States v. Thomas*, 772 F. Supp. 2d 164, 167 (D.D.C. 2011) (denying as moot motion to correct sentence after Defendant completed his term of incarceration and supervised release). Therefore, Tamberg's request for relief must implicate collateral consequences. Although Tamberg does not seek to invalidate his conviction, he identifies two possible collateral consequences: (1) stigma from public reporting of his criminal conviction, and (2) violation of his father's privacy interests based on the similarity of their names. *See generally* Mot. I at 1; Mot. II at 1. Neither qualify as a sufficient injury to maintain this action.

First, the Supreme Court has held that "the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy . . ." *St. Pierre v. United States*, 319 U.S. 41, 43 (1943); *Spencer*, 523 U.S. at 8–9 (affirming *St. Pierre*). Second, Tamberg cannot assert his father's privacy rights. "Ordinarily, a party 'must assert his own legal rights'" when alleging an injury in fact and cannot assert the legal rights of third parties. *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)); *see, e.g.*, *Muthana v. Pompeo*, 985 F.3d 893, 901 (D.C. Cir. 2021). The narrow exception for third-party standing allows a litigant to assert the rights of third parties if (1) the litigant "himself has suffered a concrete, redressable 'injury in fact' adequate to satisfy Article III's case-or-controversy requirement," (2) the litigant has "a close relation to the third party," and (3) there is "some hindrance to the third party's ability to protect his or her own interests." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 23 (D.D.C. 2010) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989)). Tamberg identifies no injury that "he *himself* has suffered." *Id.*; *see also Food & Drug Admin v. All. for Hippocratic Med.*, 600 U.S. ---, ---, 144 S.Ct. 1540, 1563 n.5 (2024) ("[E]ven when we have allowed litigants to assert the interests of others, the litigants themselves

still must have suffered an injury in fact."). Rather, the "name confusion has negatively impacted *his father's life*, and Mr. Tamberg would like to resolve it on *his behalf*." Mot. for Leave at 1 (emphasis added). To the extent the search engine's reports constitute an invasion of privacy, which is highly unlikely,[1] Tamberg's father is the injured party. *See Jung v. Wells Fargo Bank, N.A.*, No. 24-422 (RC), 2024 WL 4953272, at *4 (D.D.C. Sep. 25, 2024) (holding father lacked standing to assert invasion of privacy claim for his adult children). Although the court sympathizes with the confusion caused by the case name, Tamberg cannot assert his father's legal rights.

---

[1] Even if Tamberg could assert his father's privacy interests, the court could not grant the requested relief. Court orders restraining media reporting on criminal proceedings are presumptively unconstitutional under the First Amendment. *United States v. Trump*, 88 F.4th 990, 1004 (D.C. Cir. 2023) (citing *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1333 (1975)). Courts may "appropriately delimit what trial participants, including the accused, can say publicly," but have very "limited authority to restrict the speech of the press and other outsiders to the litigation." *Id.* at 1003–04, 1007. To restrain speech by nonparties, the speech must "present[ ] a 'clear and present danger to the administration of justice.'" *Id.* at 1004 (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 844 (1978)). The restriction must be narrowly tailored to serve a compelling government interest. *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 607 (1982).

The Supreme Court has refused to restrict "publication of information that would have been available to any member of the public who attended an open proceeding in a criminal trial" based solely on privacy interests. *Cap. Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1306 (1983); *see, e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975) ("Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it." (citation omitted)); *Neb. Press Ass'n*, 423 U.S. at 1333 (Facts in criminal proceedings "are presumed to be in the public domain."); *Sheppard v. Maxwell*, 384 U.S. 333, 362–63 (1966) ("[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom."); *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("What transpires in the court room is public property . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."); *Globe Newspaper*, 457 U.S. at 607, 610–11 (holding "Massachusetts' mandatory rule barring press and public access to criminal sex-offense trials during testimony of minor victims" violates the First Amendment); *Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (barring civil liability where a newspaper publishes truthful information which it has lawfully obtained).

Because Tamberg fails to identify a continuing and concrete injury stemming from his conviction, he lacks standing to seek the requested relief and the court lacks subject-matter jurisdiction. Defendant's motions, ECF Nos. 58, 61, 62, are DENIED.

Date: July 9, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge